**GIRALDIN BROS. REAL ESTATE COMPANY (Plaintiff), Respondent,**

v.

**Alf C. STIANSEN and Webb & Knapp, Inc. (Defendants), Appellants.**

No. 29995.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 29, 1958.

William H. Ferrell and Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for appellants.

Grand, Peper, Martin & Roudebush, Harold C. Gaebe, Jr., Harold B. Bamburg, St. Louis, for respondent.

WOLFE, Judge.

This is a suit on a written contract for commissions alleged to be due on certain leases of space in buildings owned by the defendants. The trial was to the court. There was a finding and judgment for the plaintiff and the defendants prosecute this appeal.

The petition alleges that the defendants are the present owners of a tract of land known as Hampton Village Plaza and some adjoining real estate located in the City of St. Louis. The area was being developed as a shopping center. This project was originally started by a corporation known as Boulevard Frontage Company. Buildings were being erected with the intention of leasing space in them. The plaintiff is in the real estate business and was engaged in procuring loans and leases as agent and broker. It is alleged that the Boulevard Frontage Company entered into the following contract with the plaintiff:

"This Agreement, made and entered into this 19th day of November, 1948, by and between Boulevard Frontage Company, a Missouri corporation, party of the first part, and Giraldin Bros. Real Estate Co., a Missouri corporation, party of the second part, Witnesseth:

"Whereas, the party of the first part is now the owner of real estate located in the City of St. Louis, Missouri, being in City Blocks 6261, 6262, 6340, 5754 and part of Outlot 88 of the City of St. Louis, State of Missouri, known as Hampton Village Plaza, and,

"Whereas, the party of the first part has heretofore improved part of said real estate, hereinabove described, by erecting a building thereon which is now occupied by Bettendorf's Hampton Village Market, Inc., and is now engaged in erecting another building thereon known as Building #3 (also known as the Medical Building) and expects in the near future to further improve said property, in accordance with the plat of Hampton Village, by the erection of an additional building at the southeast corner of the Plaza to be known as Building # 4, the center section of which is now under lease to J. C. Penney and Co.; and,

"Whereas, the party of the first part is desirous of securing the services of the party of the second part in the leasing of the one remaining vacant store space (approximately 20′ x 116′) in building #3, known as No. 10 Hampton Village Plaza, as well as the two wings to be erected on either side of the central section now under lease to J. C. Penney and Co., which wings are each to have a frontage of approximately 65 feet and a depth of approximately 116 feet.

"Now, Therefore, it is agreed by the parties hereto as follows:

"First: The party of the first part hereby gives and grants to the party of the second part the sole and exclusive right and privilege to lease the space, above referred to, being the one vacant store space in Building #3, known as No. 10 Hampton Village Plaza, together with all of the space in the two wings of Building #4, hereafter to be erected.

"Second: This agreement shall be and remain in force and effect until all of the space, above referred to, has been leased.

"Third: In consideration of the exclusive rights, hereinabove granted, the party of the second part hereby accepts the exclusive right and privilege to lease the space above referred to.

"Fourth: The party of the first part agrees to pay to the party of the second part the following leasing commission:

"(a) One and one-half percent (1½%) of the gross rental for the entire term of any lease, or extension thereof where option to renew is granted in the original lease, regardless of whether or not an outside broker or brokers participate in the making of said lease, it being understood and agreed that in the event an outside broker or brokers participate in the making of any lease, they are to be paid for their services by the party of the first part.

"(b) Said commissions are to be paid as follows:

"(1) The commission on the minimum or guaranteed portion of the rent to be paid by a tenant is to be paid to the party of the second part in sixty equal monthly installments during the first five years of the term of any lease; the commission on any extension, as hereinabove provided, shall be paid in the same manner.

"(2) The commission on the percentage rent to be paid by a tenant in addition to the minimum or guaranteed rent, which percentage rent is based on a certain percent of the gross amount of business done by the tenant, is to be paid by the party of the first part to the party of the second part annually within ten days after payment by the tenant.

"(3) The commission on percentage rent to be paid by a tenant where a lease is entered into entirely on a percentage basis is to be paid by the party of the first part to the party of the second part within ten days after payment by the tenant.

"Fifth: The commission due Giraldin Bros. Real Estate Co., party of the second part, is to be written into each lease (unless prohibited by the tenant) and the terms of payment, etc., specifically set out.

"Immediately upon the execution of the lease an instrument entitled 'Notice of Commission Due', properly executed and acknowledged by the parties hereto, is to be filed of record in the Office of the Recorder of Deeds for the City of St. Louis, Missouri. Said 'Notice of Commission Due' shall describe the premises covered by the lease, set forth the commission due Giraldin Bros. Real Estate Co., refer to this Leasing Agreement and state that said Leasing Agreement is binding upon the parties thereto and upon their successors and assigns.

"Sixth: This agreement shall be binding upon the successors and assigns of both parties hereto."

Both parties duly executed the contract.

It is alleged that it was the intention of the parties that the real estate should be "security for the payment of sums due under said contract", and that the contract was duly recorded with the Recorder of Deeds for the City of St. Louis.

It is also alleged that a number of leases had been entered into and that the number of leases and the terms of them were unknown to plaintiff.

It is charged that the present owners had notice of the contract and that the plaintiff was at all times willing and able to "secure and attempt to secure tenants under leases on the premises but was prevented" from so doing by the defendants.

The first count of the petition includes a prayer for $5,000 with a request that it be declared a lien upon the real estate. The same allegations are restated in the second count of the petition except for that portion which states that the real estate was to be security for the sums owing.

In the answers filed by the defendants they asserted that the contract was void for want of consideration. They also alleged that the plaintiff rendered no services of any kind in connection with the leasing of the buildings and did not procure, or in any way assist in procuring, any leases under the contract. It was also alleged that the Boulevard Frontage Company had been dissolved and that the agency was terminated by that act. There was a further allegation that the contract had

been breached by the plaintiff in 1952 when it advised Webb & Knapp that it was unable to secure tenants and that Webb & Knapp should obtain them.

There was a pretrial conference at which it was agreed that the Boulevard Frontage Company had been dissolved in July of 1950. It was also agreed that defendants had acquired the real estate that the Boulevard Frontage Company had owned. It was stipulated that the plaintiff did not actually procure any leases for any part of the property under the contract in suit.

Counsel for the plaintiff in his opening statement to the court said that there had been two prior agreements for leasing the space in the buildings between Boulevard Frontage Company and the plaintiff, and that the plaintiff had done some financing for the Boulevard Frontage Company for which it had not been paid. He likened the contract here in suit to a promissory note given in payment for past performances.

The court received in evidence the testimony of C. Earl Giraldin, president of the plaintiff corporation. He testified that he first met the officers of the Boulevard Frontage Company when they desired to finance the Hampton Village project. He said that thereafter, on June 6, 1947, his company entered into a written contract with Boulevard Frontage Company to act as agent for one year to rent space in the buildings to be erected. The plaintiff was granted an exclusive agency and was to be paid five per cent of the gross rental if no outside broker participated in procuring a lease, and seven per cent if an outside broker did participate. The contract of June 6, 1947, also provided that if the agent rented 55,000 square feet of space, including all of the space in one of the buildings to be erected, then the contract would be automatically renewed for an additional period of one year. A renewal agreement was entered into on June 26, 1948, and continued in effect until November 22, 1948,

when there was written across the face of the original contract "November 22, 1948. This contract is hereby declared null and void." This was signed for the Giraldin Bros. Real Estate Company and Boulevard Frontage Company by their respective presidents.

On November 19, 1948, the contract here sued on was signed. Up to that time plaintiff had received nothing under the previous contracts but at some time after the signing of the contract here under consideration the plaintiff was paid the commissions due under the previous contracts. The witness testified that after the property was acquired by Webb & Knapp he talked to a vice president of that company who told him that he had nothing to worry about and that Webb & Knapp would recognize the Giraldin Bros. Real Estate Company contract and pay all commissions due under it.

The witness testified that the plaintiff company had not procured or assisted in procuring tenants under the contract sued upon. He stated it was his understanding that his company would not be required to perform any work under the contract and that if it did perform it could stop at any time. He also testified that the contract in suit was drawn by the plaintiff's attorney and that he sat in on some conferences about the wording of it so that it would be clear that the plaintiff was not required to perform any services.

Another officer of the plaintiff corporation testified to the same effect as the president of the company. He stated also that he had put in a great amount of time and had traveled to New York to secure leases under the prior agreements for the Boulevard Frontage Company. He also said that he assisted in financing the building project and that the customary charge for such services would be one per cent. He said that the Giraldin Bros. Real Estate Company had been paid only one half of one per cent for the financing.

There was one lease entered into by Boulevard Frontage Company after the contract here sued upon had been signed. The plaintiff did nothing to secure this lease, but it was paid a percentage of the rentals received, both by the Boulevard Frontage Company and the defendant Webb & Knapp, Inc.

Upon the foregoing evidence the court found for the plaintiff stating as its theory that the contract was not an agency contract but was a contract to pay a percentage of future rentals in consideration of past services. It then entered a judgment for $4,620.11, plus interest, which was calculated to be the percentage fixed by the contract on the rentals collected under leases entered into by the defendants.

■ Since this case was tried by the court we will review it upon both the law and the evidence. Section 510.310 RSMo 1949, V.A.M.S.; Minor v. Lillard, Mo., 289 S.W.2d 1. Any incompetent testimony considered by the trial court will be disregarded. This court reaches its judgment on the competent evidence without regard to the trial court's rulings. Middelton v. Reece, Mo., 236 S.W.2d 335.

■ This action was upon a written contract. When parties so contract, all prior and contemporaneous negotiations and understandings of the contracting parties are merged in their written instrument. It cannot be varied and a different contract substituted for it by parol testimony. This is more than a rule of evidence, it is the substantive law of contracts. Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817; Fisher v. Miceli, Mo., 291 S.W.2d 845; York Pharmacal Co. v. Henry C. Beckmann Realty & Inv. Co., Mo.App., 304 S.W.2d 40. To this rule there are exceptions, such as where an ambiguity is present and parol evidence may resolve such ambiguity. But that situation is not before us. The contract is complete and clear in its meaning.

■ The contract specifies that the party of the first part "is desirous of securing the services of the party of the second part" in leasing certain buildings. It appoints the party of the second part its exclusive agent and agrees to pay one and one half per cent of the rents on the leases. The party of the second part "accepts the exclusive right and privilege to lease the space referred to". This clearly was a contract to employ an agent and an agreement by the agent to accept the employment.

■ It is the established law that when one seeks to recover on a contract where the undertakings of the parties are mutual and dependent, the party seeking recovery must show performance on his part or his readiness and ability to perform. Browning v. North Missouri Central R. Co., Mo., 188 S.W. 143; Asadorian v. Sayman, Mo., 233 S.W. 467; Long v. Rogers, Mo.App., 185 S.W.2d 863; Collins v. Roth, Mo.App., 224 S.W.2d 129.

■ The plaintiff's own evidence disclosed that it had not performed any act as agent. It went further than that, for it showed no intention to perform under the contract. The entire theory upon which it sought to recover was that the percentage on the leases was to be paid to it for services rendered prior to the agreement and that it was not obliged to perform under the contract. The agreement sued upon was drawn by the plaintiff's lawyer and it does not have a word in it about any existing indebtedness. As stated, the plaintiff cannot establish a new and different contract by parol evidence.

A point is raised as to the liability of the defendants on a contract of agency entered into by their predecessor in title. We need not consider this as recovery on the contract cannot be had for the reasons stated and the judgment must be reversed.

RUDDY, P. J., and ANDERSON, J., concur.