Luther SNIDER, Guardian of the Estate of Annie A. Smith, Incompetent, Appellant,

v.

William V. MILLER and Alice Miller, his wife, Respondents.

No. 7960.

Springfield Court of Appeals.

Missouri.

Dec. 5, 1961.

Henson & Henson, Poplar Bluff, for plaintiff-appellant.

John A. Casey, Poplar Bluff, for defendants-respondents.

ELMO B. HUNTER, Special Judge.

This is an action by appellant, Luther Snider, Guardian of the estate of Dr. Annie A. Smith, Incompetent, against William V. Miller and his wife, Alice Miller, respondents, for $3,500 damages for the removal by respondents of a small building from appellant's real estate which had been leased by Dr. Annie A. Smith to respondents. Respondents' defense was (1) that the lease through mutual mistake failed to contain the true agreement of the parties that respondents were to have the right to remove the building, and (2) that the building was not a part of the realty but in fact was personal property. Respondents asked for reformation of the lease and for judgment.

The parties waived a jury and the cause was tried to the court. The resultant finding was that there had been a mutual mistake made in drawing the instrument and that the instrument should be reformed to express the intention of the parties thereto by adding a clause that respondents " * * * shall have the right to remove said building from said real estate. * * * " The trial court also found that the building was so attached to the real

estate that it was in fact personal property and not part of the real property thereby justifying its removal. Judgment was entered accordingly.

On appeal appellant contends the trial court erred in finding from the evidence (1) mutual mistake; (2) in finding that the building was personalty that could be removed; and (3) in permitting witness Grozik to testify concerning certain prior negotiations and conversations between the Smiths and the Millers involving the terms the lease was to contain.

Since this case was tried by the court we will review it upon both the law and the evidence. Any incompetent testimony considered by the trial judge will be disregarded. We will reach our judgment on the competent evidence without regard to the trial court's rulings thereon. Giraldin Bros. Real Estate Co. v. Stiansen, Mo. App., 315 S.W.2d 636. And where the question is one of reformation of a lease for mutual mistake due deference must be accorded the finding of the chancellor and his finding will be sustained unless the proof is palpably insufficient in clarity and cogency to warrant the finding made by him. City of Warsaw v. Swearngin, Mo. Sup., 295 S.W.2d 174.

The evidence developed the following facts. Dr. Annie A. Smith owned a lot on Highway 67 south in Poplar Bluff, Missouri. On September 14, 1954, Dr. Smith and her husband executed a "Lease of Lot and Building" to J. L. and Helen B. Cain for a term of 5 years. The lease provided the Smiths, as lessors, were to construct a small building 18' x 12' x 8', suitable for use as a drive-in-restaurant, at a cost not to exceed $1,600. Rent at the rate of $55.00 a month was to commence when the building was completed. There was to be no subletting or assignment of the lease without the written consent of the lessors. Sometime thereafter the building was constructed and the lessees occupied it.

About March 26, 1956, respondent William Miller commenced negotiations for a lease of the premises. He contacted the Cains who referred him to Dr. Smith, the then only surviving lessor. Miller, then principal of the high school at West Frankfort, Illinois, now a teacher in the Poplar Bluff High School; together with Henry Davis, a past employee of Dr. Smith, Mr. Clarence Bilbrey, a lumberman, and John Grozik, a member of the school board of West Frankfort who was also in the construction business, went to the office of Dr. Smith. There Dr. Smith was informed that Miller was interested in obtaining a lease of the premises to erect an A & W Root Beer Stand, and that the old building on the premises didn't meet the A & W Root Beer Company standards. Dr. Smith told Miller she didn't have any money toward moving the old building. Miller then agreed he would at his own expense move the old building to the back of the lot so that Dr. Smith could dispose of it, and that he would pay off a $140.00 material lien on it. He also agreed at his own cost to build an A & W Root Beer building corresponding to A & W specifications. Until the lease ran out he was to pay $55.00 a month rent whether he had a building there or not. Witness Grozik was specifically asked: "Q. But they did agree at that time that he could remove the building at the end of the lease? A. Yes, sir."

Witness Henry Davis testified that Dr. Smith told Mr. Miller "he would have the right to move it". * * * "He asked her would he have a right to move the (new) building if he paid for it, and she was reading her lease to Mr. Cain * * * And she looked up and said yes."

Having come to this agreement Dr. Smith told them to go see her lawyer, Mr. S. H. Myrant. They proceeded to Mr. Myrant's law offices. Mr. Myrant told Miller he had better "get someone to represent you * * *, and I will look over it." Mr. Myrant then called Mr. Jack Jolly, another lawyer, and talked to him about this matter. After this Mr. Myrant called the material

man who was to furnish the material for the new building and the carpenter doing the work and advised them they need not look to Mrs. Smith for a lien on the lot for the material and work but that they would have to look exclusively to Mr. Miller.

Mr. Grozik, Mr. Miller and Mr. Bilbrey then went to Mr. Jack Jolly's law office. Grozik was asked if he recalled whether Mr. Miller advised Mr. Jolly that he was to have the right to remove any building erected on the premises by him, and that he wanted the lease fixed so he would have that right. The witness answered:

"Yes, I think he did. * * *

"Q. * * * is there any doubt in your mind * * *? A. No, there isn't.

"Q. In other words, they did have that conversation? A. Yes. * * *

"Q. What I am trying to determine is, Mr. Jolly was advised of the fact that Mr. Miller and Doc Annie had agreed that he could remove any building? A. Yes, sir." Jolly remembered being told Miller was going to remove the building that was there but had no further recollection about building removal.

Mr. Jolly then prepared a document titled "Assignment of Lease" in which the Cains assigned to respondents all of their right, title and interest in and to the September 14, 1954 lease, with the provision assignees were to pay $55.00 rental per month for the premises. This assignment was signed by the Cains and the respondents. The assignment document also contained a proviso: "Consent to this Agreement is hereby granted by the undersigned, survivor of the Parties of the First Part in the lease herein mentioned." Later, the assignment was taken to Dr. Smith's house and she signed the consent portion.

Respondent Miller then took possession of the premises. He paid off the $140.00 material lien on the old building and at

a cost of $100.00 removed it from its concrete foundation to the back part of the lot. Appellant Snider, who on October 2, 1956, was appointed guardian of the estate of Dr. Smith, later sold it on behalf of Doctor Smith.

Miller enlarged the concrete foundation and built the mentioned A & W Root Beer Building on it. The cost of the building was $3,500.00, and Miller paid it. He occupied the building over 3½ years and regularly paid the $55.00 monthly rental until the expiration of the lease in October, 1960. In February, 1960, he moved the building across the highway to another lot.

We now consider appellant's first point that the court erred in permitting witness Grozik to testify "to prior negotiations between appellant and respondent and to witness Grozik's understanding of agreement prior to drafting of written instrument." In connection therewith appellant argues there is no testimony of mutuality of mistake. The evidence, which we have set out in considerable detail indicates clearly and convincingly that both Dr. Smith and Respondent Miller intended that Miller have the right to remove the building during or at the end of the five-year lease. The written instrument did not contain the true agreement of the parties, apparently unknown to them, for it is to be presumed, absent evidence to the contrary, that they acted in good faith and would not have signed the instrument had they known it failed to express one of the material terms of their agreement. See, Steger v. Seabaugh, 346 Mo. 728, 142 S.W.2d 1001; 45 Am.Jur., Reformation of Instruments, Sections 53, 54, pps. 615 ff. Appellant's argument to the contrary is not meritorious.

Appellant also contends respondents are attempting to show a mistake on the part of the scrivener who drafted the assignment, citing Hood v. Owens, Mo., 293 S.W. 774, as holding that a mistake of the scrivener does not warrant reformation on the ground of mutual mistake where the scrivener acted for one party only. When carefully read the Hood case and the two cases cited therein, Brocking v. Straat, 17 Mo.App. 296, 297, and Dougherty v. Dougherty, 204 Mo. 228, 102 S.W. 1099, turned on the fact that there was no clear, cogent and convincing evidence of a *mutual* mistake but only, at best, that the scriveners had failed to follow the instructions of one of the parties. The Dougherty case, loc. cit. 1101, stated it thusly: "Courts of equity will reform a deed where there is cogent and convincing proof of a mutual mistake, but such is not the record before us. * * * There is no evidence of any agreement between the parties save and except the one expressed in the deed."

The accepted rule is announced in St. Louis 221 Club v. Melbourne Hotel Corp., Mo.App., 227 S.W.2d 764, 765, 768: "Courts of equity will reform written instruments so as to make them speak the real agreements of the parties in cases in which by mistake or misprision of the scrivener the writing failed to do so, and it will exercise such power not only as between original parties, but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors, or purchasers from them with notice of the facts."

It is our view the only sound rule is where the parties to the instrument have reached an accord of minds and the instrument intended to express such agreement fails to do so by reason of the mistake of the draftsman, it is immaterial who employed him, or even that the draftsman is one of the parties. This accords with prior appellate decisions on the subject. See, City of Warsaw v. Swearngin, Mo.Sup., 295 S.W.2d 174, 183(11); Zahner v. Klump, Mo.Sup., 292 S.W.2d 585, 588(6); McCormick v. Edwards, 351 Mo. 1017, 174 S.W. 2d 826, 828(1); Federal Land Bank v. McColgan, 332 Mo. 860, 59 S.W.2d 1052, 1056 (15). Thus, a lease which through mutual mistake fails to express the intentions of the parties should be reformed. Smith v. Smith, 289 Mo. 405, 233 S.W. 183.

Appellant's argument about witness Grozik's "understanding" of the agreement also is without merit. Grozik testified to what Dr. Smith and respondent said. This is relevant and admissible testimony of the agreement of Dr. Smith and respondent William Miller and is evidence of what they intended the written instrument to express.

■ The Dougherty case, supra, states the applicable rule, 102 S.W. loc. cit. 1101: "A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument, the preceding agreement must ex necessitate be shown." Although the general rule is that where there is a written contract all prior and contemporaneous negotiations and understandings are merged in the written instrument, a recognized exception exists where through mutual mistake the written instrument does not express the true agreement of the parties thereto.

■■ In order to establish a mistake in an instrument it is not necessary to show what particular words were agreed on by the parties as words to be inserted in the instrument. It is sufficient that the parties agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention. General Refractories Co. v. Howard, 328 Mo. 1139, 44 S.W.2d 65; 76 C.J.S. Reformation of Instruments § 25(a), p. 348.

In view of our conclusion that the lease should have been reformed just as the trial judge did reform it, it is unnecessary to consider whether the building was personalty and entitled to be removed as such.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

RUARK, J., not participating.