Carol Maher EDWARDS, Administratrix of the Estate of Joseph James Maher, Jr., Deceased, Appellant,

v.

Patricia ZAHNER, Administratrix of the Estate of Robert B. Zahner, Deceased, Defendant,

National Insurance Underwriters, and National Associated Underwriting Company, a Corporation, Respondents.

No. 51327.

Supreme Court of Missouri,

Division No. 2.

Oct. 11, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Nov. 8, 1965.

George H. Jones, Terrance W. Imes, Kansas City, for plaintiff-appellant.

Clem W. Fairchild, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel, for respondents.

PRITCHARD, Commissioner.

The basic purpose of appellant's petition in equity was to reach and apply insurance money under an aircraft liability policy issued by respondents to the satisfaction of a $50,000 default judgment rendered in favor of appellant against Patricia Zahner, Administratrix of the Estate of Robert B. Zahner, deceased. See §§ 379.195 and 379.200, RSMo 1959, V.A.M.S. The defense of respondents is that Robert B. Zahner was not an insured under the policy of passenger liability insurance when the aircraft accident occurred and which resulted in the deaths of appellant's intestate, a passenger, and said Robert B. Zahner. The action which resulted in said default judgment was filed in the United States District Court in Kansas City, Missouri. Respondents were duly notified of the action but refused to defend it.

The judgment in the trial court was against appellant on her second amended petition. Count I of such petition was to reform the insurance contract so as to include said Robert B. Zahner as a named insured; Count II was the action in equity to collect (under said § 379.200) on the contract as (and if) reformed; and by Count III recovery under the policy was prayed because respondents had by their acts, as alleged, in paying in full for the loss of the aircraft with knowledge of the facts waived any defects in the contract and affirmed that it was applicable while the aircraft was being operated by Zahner.

On November 15, 1956, Robert B. Zahner entered into a written lease agreement with option to purchase with the Airway Flight Service, Inc., of a Mooney Mark 20 aircraft, Number N5213B, for a price of $14,804.01. Payment was specified at $2,900 down payment and the balance was payable over 36 months at about $330 per month until paid in full. At the expiration of the lease agreement Airway Flight Service, Inc., was to transfer the title to the aircraft to Zahner free of all encumbrances for $1.00. Zahner agreed to maintain the aircraft in airworthy condition at his own expense. It was specified that "Airway Flight Service, Inc. shall not be held liable for passenger liability." This written instrument was executed by Zahner and by Karl McAnally, "Sec. Mgr. Airway Flight Service, Inc., 424 Richards Road, Kansas City, Mo."

In connection with the lease agreement and option to purchase, Zahner executed a promissory note to the Airway Flight Service, Inc., in the amount of $11,904.01, the purchase price of the aircraft less the $2,900 down payment, which was payable monthly over a three-year period. The purchase price was made up of these items: The base price of the aircraft, $12,112.50; gasoline, $20.00; insurance for one year, $847.-64; registration fee, $8.00; and interest for three years, $1,815.64. Zahner never did make the entire down payment, but did pay $500 deposit on November 9, 1956; $1,000 on November 28, 1956; and $750 on January 8, 1957. At the time of his death in the aircraft accident near Memphis, Tennessee, Zahner apparently still owed $650.00 of the down payment to Airway Flight Service, Inc. The note was sold to Dr. H. J. McAnally, who was President of Airway Flight Service, Inc., and whose practice it was to purchase its note paper and to finance its operations.

Karl McAnally, admittedly respondents' agent to solicit business and submit applications to respondents, handled the transaction of the sale by Airway Flight Service, Inc., of the aircraft to Zahner, and also for the insurance. The initial quotation of the premium on the aircraft for "Demonstration, Charter 20 hrs. per mo., and Pilot 350 hours" was made to McAnally by Raymond C. Goebel, the head of respondents' underwriting department, at the same premiums as set forth in the policy. The policy of insurance was issued specifying Airway Flight Service, Inc., as named insured. Coverage A. (B.I.) was for $100,000 each person, $300,000 each occurrence; Coverage B. (P.D.) was for $100,000 each occurrence; Coverage C. (Pass.) was for $50,-000 each person, $150,000 each occurrence. The premium for all these coverages is apparently included in that specified under "C." at $347.64. The physical damage portion of the coverage referred to in the record as "hull insurance" had as coverage D. (Gr.) $10,000 less $50 deductible; Coverage E. (Taxi) $10,000 less $250 deductible (premium $206.10); and Coverage F. (Flight) $10,000 less $250 deductible (premium $293.-90). For the policy, Airway Flight Service, Inc., remitted the total premium, $847.-64, to respondents from the proceeds of the note sale to Dr. McAnally. On February 29, 1957, Airway Flight Service, Inc., paid Dr. McAnally the balance on the note, less discounted interest, for $9,678.80, and on March 18, 1957, Airway Flight Service, Inc., received from respondent National Insurance Underwriters $9,750 for the total loss of the aircraft, being "hull insurance" Coverage "F." $10,000 less the $250 deductible. Zahner's name was not mentioned in any place in the policy, nor in the binder of coverage telegrams, nor in any documents of respondents produced at the trial. The purpose of the use of the aircraft was specified to be pleasure and business; commercial excluding instruction. The face of the policy also contained the provision: "Pilots: This policy applies when the aircraft is in flight, only while being operated by the following pilot(s): Any Pilot employed by the Named Insured and who holds a valid Commercial Pilot Certificate."

During the months of November and December, 1956, and during January, 1957, Zahner made charter flights which had been

arranged by Airway Flight Service, Inc., and referred to him. Zahner was paid $222.65 on December 31, 1956, and a check was issued to his order on January 31, 1957 for $250.51, for these chartered flights. It was the practice for Airway Flight Service to retain 10% of the charter rental for its service in providing flights to various pilots, and to pay the balance to such pilots, including Zahner. At the outset, Zahner was urged to purchase the aircraft by H. F. Jack Jones, Airway Flight Service, Inc., salesman, and Karl McAnally, upon the inducement that charter flights procured by it would be thrown to Zahner.

H. F. Jack Jones testified by deposition for plaintiff. In July, 1956, he started working with Karl McAnally with Airway Flight Service, Inc. Jones had been in the aircraft business, a "fixed base" operation, for twenty-five years. He became acquainted with Zahner after he started working with McAnally on the Mooney aircraft sales. Jones gave Zahner flying instructions and spent quite a little time with him in checking him out in the handling and procedure of the Mooney aircraft. Zahner had a commercial license—single engine land, which entitled him to fly for hire. After Zahner purchased the aircraft he kept it at Airway Flight Service, Inc., which he used as his base of operations, and no one flew the aircraft but Zahner up to the time it crashed. He discussed with Zahner the flight to Mississippi which resulted in the fatalities. Jones also had a conversation with decedent, Maher, prior to that flight in which Maher remarked, "If this trip works out real well, why, they [his employer, Smith-Loveless Company] would give me permission to go ahead and learn to fly and buy an airplane." (Bracketed portion added.) Jones helped with the search for the missing aircraft, and found enough parts of it on the west banks of the Mississippi river to identify it.

An objection by respondents was made to the reading of the following question and answer upon the grounds that it called for hearsay, that it was not binding on them (as Jones was not the agent of respondents), and was indefinite to the point that it had no probative value: "Question: And do you know whether or not any discussion was made concerning insurance? Answer: Well, Mr. Zahner asked us if the aircraft was insured and we informed him that it was insured, I believe, with the—with Dave Kratz or Aviation Underwriters, isn't it, out of St. Louis?" The objection was sustained by the court.

Jones further testified that the insurance cost was figured in the cost of the airplane, and that he was sure that McAnally told Zahner that he had insurance. Jones could not remember the exact words, but he did know that it was inquired about because Zahner said that he would not be able to come up with enough money to pay his insurance and pay his down payment right to start with, but he was informed then that there was seat coverage, which was required on charter work—there was public liability, property damage, hull, and seat coverage. Jones testified further that he would not say positively that McAnally told Zahner that he was covered by the policy, but he was sure that he did, "Otherwise, Mr. Zahner would not have flown the ship." On cross-examination, he stated that it was his practice, and it is customary in the business, that the purchaser of an aircraft pays for the hull insurance whether he owns it or whether someone else owns the aircraft in order to protect the financing—whoever finances the aircraft requires that. In chartering planes, he makes sure there is insurance coverage, and he expects the owner of that plane to pay for the insurance, and he, in turn, pays such owner sufficiently to carry the extra coverage, which is part of the charter clause.

For defendant, Raymond C. Goebel testified. He was at the time of trial in charge of the legal and research department of National Insurance Underwriters. At the time of Zahner's transactions with Airway Flight Service, Inc., Goebel was the chief underwriter for respondents. He had a telephone conversation with Karl

McAnally relative to insurance coverage of the Mooney aircraft purchased by Zahner, and made computation of the premium thereon. He wrote the policy of insurance in question pursuant to a quotation of premiums given to McAnally, and also issued an interim binder of coverage to Airway Flight Service. Goebel testified that he computed the premium based upon the fact that Airway Flight had previously been insured by respondents, the use to which the aircraft was to be put, the number of hours of passenger charters per month, and previous experience with Airway Flight Service, Inc. Goebel had never heard of Zahner, and he testified that in order to cover him in a policy he would have to know the circumstances, his experience, and number of years of operation to be able to arrive at a definite premium figure. The rates would have been different if Zahner was named insured. There are no rates filed with the Insurance Commission in aviation insurance. The terminology used in the insurance industry is that this is a "judgment rate," whereby the rating factors are past loss history, type of pilot experience, quality of maintenance and the length and quality of operation. In the case of Airway Flight Service, Inc., the rates were modified off by 20% because of its good experience. With respect to the hull insurance, Goebel ascertained that Airway Flight Service, Inc., had the title to the aircraft at the time, and he was asked to protect it at all times, which resulted in a 5% rate, with no policy fee of 10% because Airway Flight Service, Inc., was a previous policyholder. He testified further that there was a mistake in issuing the policy restricting hull insurance in the same manner in which the liability portion was because it was intended that Airway Flight Service, Inc., be covered by hull insurance at all times.

We will dispose first of respondents' contention that appellant is not entitled to the remedy of reformation in this case because, it is said, there is no ambiguity in the contract of insurance which would permit explanatory parol evidence. The policy is not ambiguous on its face, but ambiguity is not the only basis for reformation of a written instrument. There may exist also a mistake of the scrivener of the instrument who does not incorporate therein the true prior intention of the parties which will entitle either to the remedy in equity of reformation of the instrument. See 76 C.J.S. Reformation of Instruments § 20, p. 344; 44 C.J.S. Insurance § 279c, p. 1117; 45 Am.Jur.Reformation of Instruments § 54, p. 616; Annotation, 26 A.L.R. 504, and the Missouri cases there discussed. In this case the allegation of the petition is that Karl McAnally was the agent of respondents, that he handled the transaction, that respondents through their agents had full knowledge that Zahner had paid the premium on the policy, that Zahner was intended to be a named insured, and that the failure to include him as named insured was by mutual error and mistake of all the parties, and that said policy should be reformed to state the true intent of the parties. A cause of action for the reformation of the policy was thus stated. See Snider v. Miller, Mo.App., 352 S.W. 2d 161, 164, and cases and authority there cited; and 29 Am.Jur. Insurance §§ 341, 346, pp. 304, 307. Curiously, we note that respondents by their evidence showed that a mistake of scrivener, Goebel, was made in restricting the hull insurance to times when the aircraft was being operated by commercial pilots in the employ of Airway Flight Service, Inc., it being testified to by Goebel that it was intended that such hull coverage exist at all times. No ambiguity exists in that portion of the policy, yet respondents insist that the policy was reformed by mutual consent to show full-time coverage of hull insurance by reason of Goebel's mistake, apparently as a defense to appellant's third count.

The problem here is not one merely of law but is more evidentiary in nature. In this situation we will give

due deference to the trial court who observed and judged the credibility of those witnesses who testified before him, "[A]nd his finding will be sustained unless the proof is palpably insufficient in clarity and cogency to warrant the finding made by him." Snider v. Miller, supra, loc. cit. 352 S.W.2d 162 [1, 2]. The burden of proof in this reformation case was upon appellant to show by clear and convincing evidence that the agreement of the parties was that Zahner was *intended* to be a named insured and covered at all times under the liability portion of the policy. Allan v. Allan, Mo., 364 S.W.2d 578, 581 [1–5]; Leimkuehler v. Shoemaker, Mo., 329 S.W.2d 726, 730 [1–3]; Allen v. Smith, Mo.App., 375 S.W.2d 874, 880 [9–11]; Binswanger v. Employers' Liability Assur. Corp., 224 Mo.App. 1025, 28 S.W. 2d 448, 453 [2, 3].

▬▬ Appellant's Points I and II relate to her right to bring an action in equity to reform the policy of insurance to include Zahner as insured. We discuss these matters no further than above. Points III and IV present appellant's claimed error that the trial court erred in refusing to find that McAnally's knowledge (as agent) was that of respondents; and that when the premium ($847.64) was added to the promissory note signed by Zahner it constituted payment of the premium by him; and by Point V error is claimed in the court's refusal to rule that when Zahner paid the premium it is presumed that he intended to get what he bought, to wit, insurance, and that it cannot be presumed that McAnally intended to take the premium without giving Zahner the protection he bought. As a general principle, the knowledge of McAnally, as agent, would be imputed to his principals, the respondents. Bledsoe v. Farm Bureau Mutual Insurance Co., Mo.App., 341 S.W.2d 626, 629 [3]; Heindselman v. Home Insurance Company, Mo.App., 282 S.W.2d 191, 192 [3]; State ex rel. John Hancock Mut. Life Ins. Co. v. Hughes, Mo., 152 S.W.2d 132, 134 [2–7]. The difficulty here

is with the sufficiency of appellant's proof as to *what* McAnally knew with respect to any agreement made prior to the issuance of the insurance policy. Karl McAnally did not testify in the case although present under subpoena issued at appellant's request according to the statement made by her counsel during argument before this court. In Snider v. Miller, supra, loc. cit. 352 S.W.2d 165 [7], Dougherty v. Dougherty, 204 Mo. 228, 102 S.W. 1099, 1101 is quoted: " 'A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument, the preceding agreement must ex necessitate be shown.' " Here, the only testimony as to any prior agreement is to the effect that insurance was discussed between Zahner and McAnally; that Zahner thought that he had insurance; witness Jones testified that he was sure but not positive that McAnally told Zahner he was covered by the policy; and it is clear that Zahner paid the premium thereon. The record is silent, however, as to any agreement or intent of the parties (McAnally, as agent, and Zahner) that the premium paid was to cover anything beyond what was specified in the policy, i. e., "Any Pilot employed by the Named Insured and who holds a valid Commercial Pilot Certificate." Absent such evidence, the trial court was justified in concluding from other evidence adduced that it was intended (as respecting passenger liability here in issue) that the policy cover Zahner and Airway Flight Service, Inc., only when Zahner was flying as an employee of that named insured. There was substantial evidence that Zahner was so employed; Jones testified it was his custom in his charter flights to have the pilot pay for seat coverage— Jones carried his own insurance and charged the pilot therefor; Goebel, the underwriter, had never heard of Zahner, and if he had been the named insured pilot, the rate would have been computed differently. Although the fact that Zahner paid the premium could create a re-

buttable presumption, that he was expecting liability coverage in his own name, we cannot say from this fact, when coupled with other facts, that the prior agreement was to include him as a named insured so that he would be protected by liability insurance when on charter flights of his own not connected with any employment by Airway Flight Service, Inc.

Appellant's cited cases do not sustain her argument. Malone et al. v. State Life Ins. Co., 202 Mo.App. 499, 213 S.W. 877, held merely that a policy of life insurance took effect and remained in force until a note given for the first annual premium became due and default was made in payment. Here we have held that Zahner did pay the premium by its inclusion in his promissory note, but that the evidence was insufficient to show that the payment of premium was for any more than the coverage specified in the policy as issued by respondents. Vail v. Midland Life Ins. Co., Mo.App., 108 S.W.2d 147, 151 [11], is a like holding that where an insured gave a note for the first premium so far as he was concerned the premium was paid. So also with New York Life Ins. Co. v. Silverstein (C.C.A.Mo.), 53 F.2d 986. None of these cases had a question as to the sufficiency of the evidence to establish the type of insurance coverage intended.

Under Point V, appellant cites the case of Falkenberg v. Industrial Fire Ins. Co. et al., 53 Ohio App. 481, 5 N.E. 2d 935. In that case a mechanic's lien holder on property purchased a fire insurance policy which erroneously showed his interest to be that of a mortgagee. Defendant's admitted agent had dealt with the plaintiff in which his interests in buildings being constructed had been satisfactorily insured. The court remarked, loc. cit. 5 N.E.2d 936 [2], "There cannot be the slightest doubt that Walls understood perfectly just what the plaintiff wanted." Here, the evidence does not clearly establish what Zahner and McAnally agreed to,

and the other rebutting evidence, above alluded to, was for the trier of the fact. So also was any unfavorable presumption against respondents which could have been drawn by reason of the failure of McAnally, respondents' agent, to testify. Earley v. Automobile Ins. Co. of Hartford, Conn., Mo.App., 144 S.W.2d 860, 862 [2, 3]. Such presumptions are not evidence of any fact, but are drawn for the purpose of persuasion of, or argument to, the trier of the fact, and in the light of other evidence he may accept or reject them. 31A C.J.S. Evidence § 156(1), p. 398.

Appellant's Point VI presents the general proposition, with which we cannot disagree and above have held, that "Equity will reform a contract to meet the true intent of the parties even though there may have been mistake, negligence or fraud on the part of one of the parties." By Point VII she urges again that she has shown by clear, convincing and cogent evidence that she is entitled to reformation. Under all of the facts of this case we agree with the trial court's finding as we have ruled above.

The remaining Point VIII states that the court erred in refusing to rule that by payment for the loss of the aircraft after knowledge of the death of both Zahner and Maher, and with full knowledge that Zahner was not an employee of Airway Flight Service, Inc., the respondents affirmed the contract and that they intended to cover said aircraft while it was being operated by Zahner and waived the provision of nonapplicability.

The lease-purchase agreement here is a security transaction. It is a well-known fact that in the sale of property under deferred payments the sellers protect their interest by the use of physical damage insurance coverage (here hull insurance), and that the purchasers pay the premiums, as a part of finance arrangements, on the policy. Here it was for the trial court to believe Goebel's tes-

timony that there was an erroneous restriction of coverage in the policy as specified: commercial pilots in the employ of Airway Flight Service, Inc. That company and respondents agreed that a mistake had been made. They achieved by mutual consent their own reformation of the policy with respect to hull coverage, in that it was intended that such coverage be in force at all times. Such agreement would not be an acknowledgment of passenger liability, a separate coverage, for Zahner's flights outside of his employment. The respondents have paid nothing upon that portion of the policy, hence appellant's cited waiver cases, wherein insurance companies paid to mortgagees and others the amount of their interests under the identical and contested coverage provided in the policy, are not applicable.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.