GROSSMAN WRECKING COMPANY, a corporation, Plaintiff-Appellant,

v.

BITUMINOUS CASUALTY CORPORATION, a corporation, Defendant-Respondent.

No. 35747.

Missouri Court of Appeals, St. Louis District, Division Three.

Dec. 10, 1974.

Motion for Rehearing and or Transfer Denied Jan. 14, 1975.

Application to Transfer Denied March 10, 1975.

Alvin A. Wolff, St. Louis, for plaintiff-appellant.

Robertson, Ely & Wieland, Louis A. Robertson, St. Louis, for defendant-respondent.

SIMEONE, Presiding Judge.

This is an action in equity for reformation of a policy of insurance. The appeal is by plaintiff-appellant, Grossman Wrecking Company, a corporation, from a judgment entered June 13, 1973, by the circuit court of the City of St. Louis in favor of the defendant-respondent, Bituminous Casualty Co., on Count II of the plaintiff's petition which sought to reform a comprehensive liability insurance policy and endorsement thereto. The trial court designated the judgment on Count II as a final judgment for purposes of appeal. Rule 81.06, V.A.M.R.

This interminable, lengthy and complex litigation began some 14 years ago. The episode began in March, 1961, when the President of the Grossman Wrecking Co., Sidney Grossman, requested insurance coverage from the "authorized agent" of the Bituminous Casualty Co., Cervantes, Cobb

and Walsh, General Insurance Agency. Mr. Grossman called the agency to "cover my insurance for the wrecking company" and explained to the agent the nature of his operation, the hazards involved and for his company's benefit and the customers he served he would have to be "fully and completely covered, all risks covered by the insurance." According to Mr. Grossman's testimony, he was advised by the agent that "we would be completely covered on all risks involved in a demolition project." Mr. Grossman, upon graduation from college in 1939, went "immediately into the scrap metal business which involves wrecking and demolition." He was trained in "all facets of administration operations. . . . " He had been securing insurance with the insurance agency from whom he obtained the policy of insurance for some seven or eight years prior to 1961.

As a result of the request for insurance, a comprehensive liability policy, No. CL 852975 was issued by Bituminous on March 28, 1961, was signed by the "authorized representative" and covered the policy period April 1, 1961, to April 1, 1962. The policy coverage included "Coverage A—Bodily Injury Liability" and "Coverage C—Property Damage Liability—Except Automobile." [1] For Coverage C, the limits of liability were $25,000.00 for each accident. Advance premiums paid amounted to $877.50 for bodily injury liability and $748.90 for property damage liability, or $1626.40. On the face of the policy there were listed (numbered 1 through 13) certain endorsements forming part of the policy at issuance.

Pertinent to this proceeding were endorsements numbers 6, 9, and 13. Endorsement No. 6 provided that the insurance afforded by the policy as respects wrecking, dismantling and salvage operations shall not apply at any location other than the Company's place of business "unless the

1. The insurer agreed to pay under Coverage C on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss or use thereof, caused by accident."

Insured notifies the Company [respondent] *prior to the undertaking* of such aforementioned operations and the Company accepts coverage for each specific project or job, by means of a written endorsement to this policy."

*Endorsement No. 9*, dated March 28, 1961, effective April 1, 1961, was entitled "Amendment of Property Damage Exclusion." This endorsement reads,

"In consideration of an additional premium to be determined by audit, it is understood and agreed that this policy is amended as follows:

(1) Exclusions (L) and (M) of the policy do not apply;

\*    \*    \*    \*    \*    \*

(3) Coverage C.–Property Damage Liability Other than Automobile Rates Are Amended as Follows:

| Code No. | Rates |
|---|---|
| | Property Damage Liability Coverage C. |
| (Iowa)    3451s | 8.951 |

(4) This endorsement applies only to operations in Connection with the demolition of 2 Buildings at . . . Cedar Rapids, Iowa."

Endorsement 13, dated March 28, effective April 1, 1961, is entitled:

"Completion of Declarations With Respect to Application of Exclusions (L) and (M).[2] It is agreed that the operations described by each classification stated under item (a), Premises—Operations, of Schedule # [1], for which the code number is indicated below, are not subject to the exclusion or exclusions noted opposite the code number for such classification.

| Code Number | Exclusion |
|---|---|
| 3451sxc | (M)" |

All these endorsements were signed by the president of Bituminous and by the "authorized representative".

The printed liability policy contained certain exclusions. The "Exclusions" portion of the policy stated, "This policy does not apply" to certain exclusions. The two pertinent here are exclusions "L" and "M". Exclusion L provides that the policy does not apply

"under Coverage C, to injury or destruction of any property arising out of (1) blasting or explosion . . . or (2) the collapse of or structural injury to any building or structure due . . . (b) to . . . demolition of any building or structure. . . ."

Exclusion M provides that the policy does not apply

"under coverage C, to injury or destruction of wires, conduits, pipes, mains, sewers . . . below the surface of the ground, if such injury or destruction is caused by . . . mechanical equipment for the purpose of grading of land, paving, excavating or drilling. . . ."

Mr. Grossman testified that he did not have any conversation with respect to the meaning of these endorsements or whether they carried an additional premium. He looked the policy over "casually" but did not study it in depth.

Sometime prior to August 5, 1961, and after April 1, 1961, the plaintiff, Grossman Wrecking Co., had occasion to bid on the demolition of a gas tank or "holder" belonging to Laclede Gas Co. located at 322 Catalan Street in St. Louis, Missouri. Mr. Grossman called the insurance agency and informed it that they were bidding on the dismantling of the gas tank-holder. Bituminous sent an inspector to the site, and after such inspection, Grossman received an endorsement to the basic policy (Endorsement # 17) which stated,

"It is understood and agreed that such issuance as is afforded by this policy, is hereby extended to apply as respects the Insured's operation of dismantling steel gas holder from the following location —322 East Catalan, St. Louis, 11, Mo."

---

**2.** The letters "L" and "M" were typed on the printed form.

This endorsement was dated July 3, 1961, and became an endorsement to the policy. However, no endorsement similar to endorsement # 9, supra, eliminating exclusions L and M for an additional premium was forwarded or provided to the insured, which increased the rates for property damage liability under Coverage C. Grossman then proceeded on August 5, 1961, under contract to dismantle the Laclede Gas tank or holder. During the course of the *dismantling*, a rented "crane and boom" was used and was operated by a hired operating engineer. The crane and boom fell over on its side and in doing so damaged some pipes and equipment adjacent to the gas tank. The pipes and equipment were not, however, part of the demolition project. For this damage Laclede made a claim against Grossman in the amount of $5,018.65 which was eventually paid. Mr. Grossman informed the insurance agent of the damage and was told to file the "normal form" and that he (Grossman) was "completely covered by our insurance." Several conversations followed, but Bituminous refused to pay the claim.

Eventually this suit followed. On January 26, 1973, Grossman filed its amended petition in two counts. Count I sought damages for $5,018.65 and for vexatious delay and attorneys fees. Count II alleged the issuance of the policy, the dismantling of the Laclede gas tank on Catalan, the damage caused, the payment by Grossman Co. to Laclede, and that the claim was "included within coverage C of the policy. . . ." The petition further alleged that the prior agreement of the agent and the plaintiff was to the effect that exclusion L would be eliminated under endorsement 13, and that endorsement 13 retained exclusion L contrary to the understanding of the parties so that there was an "inadvertent clear error and mistake of the scrivener" amounting to a "mutual mistake of the parties." Grossman Co. further alleged that Exclusion L did not apply to the damage caused Laclede since the fall of the crane (and boom) did not arise out of

the collapse of a structural injury to any building or structure due to the demolition of any building or structure. Plaintiff alleged that it paid Laclede the amount of the damage to its property, and concluded that "in the event Exclusion L would otherwise apply . . . plaintiff seeks . . . to reform said endorsement 13 . . . so that it properly and adequately states and reflects the mutual intention and agreement of the parties to the coverage . . . by including [eliminating?] Exclusion L therein. . . ." The plaintiff prayed therefore for the court to reform the policy and endorsement 13 to conform to the agreement of the insured and the authorized agent by "including in Endorsement Number 13 Exclusion L as one of the exclusions to which plaintiff's dismantling and salvage operations are not subject. . . ." (Plaintiff in reality seeks to eliminate exclusion L so that the basic policy therefore would insure the contingencies in exclusion L and the insured would be covered by insurance by the falling over of the crane and boom.)

Prior to trial, Bituminous filed its answer alleging that exclusion L under the policy excluded the damages to the Laclede property, that plaintiff negligently failed to request full type coverage and was guilty of laches in not taking affirmative action with its agent who procured the insurance.

Bituminous, in answer to interrogatories filed by Grossman, admitted that (1) prior to the Laclede dismantling, Grossman notified Bituminous that it "desired said proposed operations be included within the coverage" of the policy, (2) following notification Bituminous inspected the Laclede premises at 322 East Catalan, (3) it issued on July 3, 1961, endorsement No. 17 and issued its certificate certifying that the policy was in effect covering the job of dismantling the gas tank, (4) the crane and boom "fell on pipes and equipment belonging to Laclede Gas Company causing damage to said pipes and equipment", (5) they did not constitute any part of the gas holder (tank) and (6) that Grossman which

was legally liable paid the claim of Laclede. Bituminous admitted that it denied liability for the claim on "the sole ground" that the casualty was excluded from coverage under exclusion L of the policy.

After defendant's motion to transfer the cause to the equity division of the circuit court, which was sustained, trial of the cause began February 12, 1973. Mr. Grossman testified for the plaintiff. Bituminous' principal defense at trial was that exclusion L was not requested to be eliminated, and that under the rate schedule as listed in the insurance manual, the elimination of exclusion L required a higher rate than the basic rate for property liability insurance under Coverage C. The net effect of the defense as established by the vice president of the "authorized agent" and the branch manager of Bituminous, Mr. Jack Gabler, a "rate man", was that if exclusion L was to be eliminated on a particular wrecking project, it was required that the project be approved by the insurance company and that a specific endorsement eliminating exclusion L was necessary and this required an additional premium of $3.40 per $100 of remuneration. Mr. Gabler testified that the endorsement to cover a particular job at a certain location meant only that that job was covered by the basic policy, for which the basic property damage rate was $1.70xc[3] but for exclusion L (to the underwriter exclusion L was equivalent

to "xc") to be eliminated from the basic policy, an additional $3.40 per $100 remuneration was charged.[4] The defense was that in numerous instances both in Missouri and elsewhere, Bituminous covered certain demolition projects and issued specific endorsements eliminating exclusions "L" and "M". For example, endorsement #9, an original endorsement to the basic policy, amended the property damage provision by eliminating exclusions L and M on property to be demolished in Cedar Rapids, Iowa. Endorsements numbers 21, 24 and 27 expressly amended the property damage exclusion by eliminating exclusions L and M for an additional premium.[5] It was testified to by Mr. Gabler that code number 3451sxc was the code number for a particular classification of coverage—i. e. wrecking operations.[6] Therefore, it was contended that exclusion L applied to all wrecking operations unless there was a specific endorsement for an additional premium eliminating exclusion L.[7] And since there were a number of operations and endorsements which eliminated exclusion L in this and other states and for which a higher premium was paid by Grossman, it was contended by Bituminous that exclusion L applied to the basic policy and that exclusion L excluded liability for the Laclede damage. Hence, Bituminous contended it was not liable to pay Grossman for the amount paid by it to Laclede for the damage to the pipes and equipment.

3. "x" stands for explosion under part 1 of exclusion L, and "c" stands for collapse under part 2 of exclusion L.

4. 3451 means both property damage and bodily injuries. "s" means a different rate increase table for bodily injuries. "x" means that part 1 of exclusion L (explosion) applies and "c" means that part 2 (collapse) of exclusion L applies to the policy and is included therein so that the insured is not covered under exclusion L (x–c).

5. In all these endorsements, exclusions L and M "does" [sic] not apply and the rates were amended as follows: "Code No. 3451sxc—rates—$6.962." Note that these endorsements use the code "3451sxc" rather than merely 3451s as shown in endorsement No.

9, eliminating exclusion L and M from the Cedar Rapids project.

6. When "xc" is used in the rate schedules this is equivalent to exclusion L so that exclusion L applies to the policy and the insured is not covered by the contingencies in the exclusion. It is to be noted, however, that endorsement 9 does not use the code "xc" indicating that exclusion L is eliminated from the policy. In the other endorsements "3541sxc" means the classification of coverage, i. e., wrecking operations.

7. Note that in endorsement No. 13, the code number opposite exclusion M is 3451sxc which specifically refers not to exclusion M but to exclusion "L". This was explained by saying that 3451sxc is a classification for wrecking operations.

The trial court found the issues on reformation and on the non-elimination of exclusion L in favor of Bituminous and rendered judgment in favor of Bituminous and against plaintiff on Count II of the petition. After filing an unsuccessful motion for new trial, in which Grossman Co. contended that the policy (endorsement No. 13) should be reformed to eliminate exclusion L because it was the result of an "inadvertent error and mistake of the scrivener" and did not express the true and actual agreement of the parties, Grossman appealed.

Appellant, Grossman, contends: (1) that the court erred in failing to reform the policy because it proved by clear and convincing evidence that Bituminous through its authorized agent agreed to provide full and complete liability coverage for its wrecking business but that through mutual mistake to eliminate exclusion L the policy did not express the true agreement of the parties, (2) the failure to call as a witness the authorized agent of Bituminous raises an "irrefutable" [sic] presumption that his testimony would have been unfavorable to Bituminous, and (3) that in the event reformation is not ordered, the judgment should be modified because exclusion L is not applicable to the facts under consideration for the reason that exclusion L applies only to a situation where the damage arises out of the "collapse of or structural injury" to a building or structure due to demolition. In such instance there is no need for reformation of the policy.

Bituminous, on the other hand, contends that (1) the trial court did not err because the burden on the plaintiff seeking reformation is a "demanding" one, "Ant [sic] it has been held that to sustain such action the chancellor must be convinced 'beyond a reasonable doubt' of the existence of the mistake and its mutuality," (2) since Grossman failed to meet these requirements, although it had possession of the policy for several months prior to the Laclede operation, reformation cannot be granted, (3) whatever presumption there

was for the failure to call the "authorized agent" as a witness was for the trier of fact to determine and (4) that exclusion L is applicable and in any event the applicability of this exclusion was not preserved for appeal since it was not "presented to him for ruling."

The single issue we must resolve is as stated by the trial court—whether the contract of insurance should be reformed to eliminate exclusion L, which the plaintiff contends was eliminated as part of the original agreement between the plaintiff and the authorized agent.

█ In ruling on this cause we are bound by certain well-established principles. Our review is governed by Rule 73.-01(d) which provides that we are to examine the case upon both the law and the evidence and not set aside the judgment entered in the lower court unless it is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. The Supreme Court has equated clearly erroneous with "incorrect." Weston v. Great Central Insurance Company, 514 S.W.2d 17, 21 (Mo. App.1974). While we are to reach our own independent conclusions, the judgment of the trial court is presumed to be correct and the burden on appeal to demonstrate otherwise is on the appellant, and so far as the credibility is concerned, we defer to the trial court. The problem here is not one merely of law, but is also evidentiary in nature, and in this situation we must give due deference to the trial court, and its findings are to be sustained unless the proof is palpably insufficient in clarity and cogency to warrant the findings made. Edwards v. Zahner, 395 S.W.2d 185, 189–190 (Mo.1965).

█ The principles relating to reformation are also well recognized. It is the province of courts to enforce the contract made by the parties, not to make or alter them. But equity has the power to reform an insurance agreement which by mistake fails to express the true intention of the

parties and this power has long been unquestioned. Equity may reform the policy or endorsement so as to make it speak the real agreement when because of a mistake or misprision of the scrivener the policy fails to show the true agreement because of the mistake. However, a mistake affording ground for the relief of reformation must be a mutual one and common to both parties to the instrument and it must appear that both have done what neither intended. Walters v. Tucker, 308 S. W.2d 673, 675 (Mo.1957); Annot., 32 A. L.R.3d 661, 680 (1970). In numerous instances insurance agreements have been reformed to reflect the true agreement of the parties. Schimmel Fur Co. v. American Indemnity Co., 440 S.W.2d 932 (Mo.1969); Earley v. Automobile Ins. Co. of Hartford, Conn., 144 S.W.2d 860 (Mo.App.1940). But in order for reformation to be decreed the evidence showing mutual mistake must be clear, cogent and convincing, and the burden of proof is upon the appellant to show that the agreement of the parties was as contended by the plaintiff. Earley v. Automobile Ins. Co. of Hartford, Conn., supra, 144 S.W.2d at 862; Edwards v. Zahner, supra, 395 S.W.2d at 190. The mistake must be made out by the "clearest evidence" and "upon testimony entirely exact and satisfactory." Horine v. Royal Ins. Co., 199 Mo.App. 107, 201 S.W. 958, 959 (1918), quoting Tesson v. Atlantic Mutual Ins. Co., 40 Mo. 33, 36 (1867). If there are circumstances which in common prudence ought to put a party to particular inquiry by which inquiry the party could have discovered the true facts, reformation may then be an inappropriate remedy.

■ The trial court rendered judgment in favor of Bituminous. Whether it did so because it found there was no mistake as to whether exclusion L was applicable and not eliminated from the policy or whether it did so because the language of exclusion L was applicable so as to exclude liability —is difficult to determine.

We cannot say that the trial court was clearly erroneous on either ground. It is contended that Mr. Grossman requested full insurance from the agent which was not forthcoming, and the failure to provide full risk coverage constituted a mutual error or mistake so that the policy should be reformed to eliminate exclusion L. It is also contended that the many ambiguities on the endorsements are sufficient to reform the policy. But the trial court was not clearly erroneous in concluding that from other evidence adduced the policy did include exclusion L. Although the testimony of Mr. Grossman was such that he had expected full risk insurance, the trial court could well conclude that this fact when coupled with other facts that there were insufficient grounds for reformation. When the trial court has denied reformation, such decision has not been disturbed. Edwards v. Zahner, supra. The documentary evidence and the testimony, especially that of Mr. Gabler, would indicate that the basic premium was applicable to the normal risks under Coverage C and that when exclusion L was to be eliminated specific endorsements were made requiring a higher premium. These endorsements were forwarded to the plaintiff and the additional premiums presumably paid. While there is no question that the endorsements were confusing, yet when exclusion L was to be eliminated additional premiums were charged on particular jobs and the higher risk obtained. From all the evidence, the trial court could have found there was no mutual or common mistake concerning the prior agreement between Grossman and the agent so as to require reformation of the policy and endorsement 13.

■ The court could also have concluded that the injury was an injury "arising out of a structural injury to a structure" under the exclusion due to demolition. A structure has been broadly construed. Scores of cases have defined the word. Greenberg v. Koslow, 475 S.W.2d 434, 437 (Mo.App.1971); Deiner v. Sutermeister, 266 Mo. 505, 178 S.W. 757, 760 (1915); 83 C.J.S. Structure p. 547.

The appellant contends that the crane and boom is not a "building or structure" and did not "collapse" within the meaning

of the exclusion. This argument is misplaced. The issue is whether the property damaged is a structure within the policy and whether the policy did not apply to a "structural injury" to a "structure" due to "demolition".

Appellant complains that the authorized agent for Bituminous did not testify in the cause, and hence there is a presumption that his testimony would have been unfavorable. But such presumption is not evidence of any fact, but is drawn for the purpose of persuasion of, or argument to, the trier of the fact and in the light of other evidence he may accept or reject it. Edwards v. Zahner, supra, 395 S.W.2d at 191.

We have examined the whole of the record, the points raised by the appellant, and the decisions relied on by the plaintiff, and cannot conclude that the trial court was clearly erroneous in denying reformation.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.