GROSSMAN IRON & STEEL CO., etc.,
Plaintiff-Appellant,

v.

BITUMINOUS CASUALTY CORP.,
Defendant-Respondent.

No. 37794.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Aug. 30, 1977.

As Modified on Court's Own Motion
Sept. 13, 1977.

Appellant's Motion to Modify and to
Correct Opinion and Judgment
Denied Nov. 14, 1977.

Alvin A. Wolff, St. Louis, for plaintiff-appellant.

Robertson, Ely & Weiland, Louis A. Robertson, St. Louis, for defendant-respondent.

KELLY, Presiding Judge.

In this appeal from a judgment of the Circuit Court of the City of St. Louis entered in favor of the respondent Bituminous Casualty Corporation two questions are presented for decision: whether the trial court erred in sustaining respondent's motion for directed verdict at the close of the case and in denying appellant Grossman Iron & Steel Company's motion for directed verdict at the close of the case.

This case had its origin in a policy of insurance issued by the respondent to the Grossman Wrecking Company[1] for one year commencing April 1, 1961, wherein the respondent agreed to pay on behalf of the appellant all sums, not to exceed $25,000, which appellant became legally obligated to pay as damages because of injury or destruction of property during the policy period. The accident out of which appellant's claim arose occurred on August 4, 1961, when a crane and boom operated by one of appellant's crane operators tipped over, fell on and damaged a pipe line belonging to the Laclede Gas Company. Laclede Gas Company made a claim for damage to these pipes for $5,018.65. Appellant notified respondent thereof but respondent denied liability for payment of the claim on the sole ground that the casualty was excluded from coverage by Exclusion (1) of the policy. On advice of counsel, appellant paid Laclede Gas Company's claim on July 30, 1962, and when the respondent refused to pay the amount of the claim to appellant a two-count petition was filed in the Circuit Court of the City of St. Louis.

Count I of appellant's petition sought damages for breach of contract, vexatious delay and attorney's fees; Count II sought reformation of the contract by eliminating Exclusion (1) from the policy of insurance by Endorsement 13 in accordance with an alleged prior agreement between respondent's agent and appellant.[2] Respondent's motion to transfer the cause to the equity

---

1. During the pendency of this action Grossman Wrecking Company, the named insured in the policy, merged with Grossman Iron and Steel Company.

2. Endorsement 13, which formed a part of the policy at issuance effective April 1, 1961, is:

 "COMPLETION OF DECLARATIONS WITH RESPECT TO APPLICATION OF EXCLUSIONS (L) AND (M)

 It is agreed that the operations described by each classification stated under item (a), Premises—Operations, of Schedule # , for which the code number is indicated below, are not subject to the exclusion or exclusions noted opposite the code number for such classification.

 | CODE NUMBER | EXCLUSION |
 | --- | --- |
 | 3451s xc | (M) " |

division of the court for trial was granted and Count II was tried and decided adversely to appellant. On appeal that judgment was affirmed. *Grossman Wrecking Company v. Bituminous Casualty Corporation*, 518 S.W.2d 719 (Mo.App.1975).

The case then came on for trial on Count I of appellant's First Amended Petition. At the close of the case respondent's motion for directed verdict was sustained and appellant's motion for directed verdict was denied.

■ In deciding whether the trial court erred in sustaining the respondent's motion for directed verdict at the close of the case we look to the pleadings to ascertain what facts were at issue and then view all of the evidence in a light most favorable to the appellant, giving it the benefit of any and all reasonable inferences to be drawn from the evidence not in conflict with its theory of the case, and we disregard respondent's evidence except insofar as it might aid appellant's case. *Kaelin v. Nuelle*, 537 S.W.2d 226, 232[6] (Mo.App.1976).

It was conceded by the respondent that the appellant purchased from it through its "authorized agent" a Comprehensive Liability Policy, No. CL 852975 with a policy period from April 1, 1961, to April 1, 1962. According to this policy Declarations the named insured was Grossman Wrecking Company, # 5 North Market Street, St. Louis, 6, Missouri, and the insured, a corporation was the tenant of a portion of the described premises. Although there was a provision in the policy for entry of the "Business of the named insured," no entry was made indicating insured's business. Schedule No. 1 of the Declarations in describing the hazards covered on the appellant's premises and operations identified it as the wrecking of buildings or structures which were "Not Marine." The Advance Premium for coverage under the policy was $748.90 for "Property Damage Liability—Except Automobile." A total of 13 Endorsements were enumerated on the face of the policy in typewritten entries under "Endorsements forming part of this policy at issuance."

Under "Insuring Agreements" the respondent undertook, by affording appellant "Coverage C—Property Damage Liability—Except Automobile," to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Among these Endorsements was Endorsement # 6 which reads:

### "ENDORSEMENT
### RESTRICTION ENDORSEMENT—
### LIMITING LOCATIONS

It is agreed that such insurance as is afforded by this Policy shall not apply as respects the insured's WRECKING, DISMANTLING AND SALVAGE operations performed at any location other than as stated in Item 1. (sic) 'Location of Premises,' of the Declarations, forming a part of this Policy, unless the Insured notifies the Company prior to the undertaking of such aforementioned operations and the Company accepts coverage for each specific project or job, by means of a written endorsement to this Policy."

There were also a number of Exclusions contained in the policy, but the only one germane to the issues here was (1):

"(1) under coverage C, to injury or destruction of any property arising out of (1) blasting or explosion, other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment, or (2) *the collapse of or structural injury to any building or structure due* (a) to grading of land, excavation, borrowing, filling, back-filling, tunneling, pile driving, coffer-dam work or caisson work, or (b) to moving, shoring, underpinning, raising or *demolition of any building or structure* or removal or rebuilding of any structural support thereof; . . ." (Emphasis supplied).

While this policy was in effect the appellant entered into a contract with the Laclede Gas Company to dismantle a large gas holder on its premises at 322 East Catalan

Street in St. Louis. Prior to commencing performance of the contract, and in compliance with Endorsement # 6 to the policy, appellant notified the respondent of the contract for the dismantling of the gas holder and requested coverage for this job. Upon receipt of the notice the respondent dispatched Mr. Charles L. Blaylock, one of its safety engineers, to the premises on Catalan Street for the purpose of conducting an inspection to ascertain the hazards to which the respondent would be subject if coverage was extended as requested. Thereafter, effective July 3, 1961, by Endorsement # 17 to the policy, coverage was extended to "the insured's operation of dismantling steel gas holder," subject to "all exclusions, conditions and other terms of the policy except as specifically amended herein, . . ." A certificate of insurance was issued by the respondent to Laclede Gas Company certifying that this policy was in effect and covered the contract with the appellant for the dismantling of the gas holder located on the premises on Catalan Street.

Appellant commenced performance of the contract, and while a crane operator it had hired from the Union Hall and put on its pay-roll, was moving a crane and boom from one place to another on the premises, the crane and boom toppled over and fell on a pipe-line six to eight inches in diameter which led from a battery of butane or propane tanks and was not connected to the gas holder. This pipe-line was elevated and supported by steel supports; it was not to be dismantled or wrecked in performance of the contract with Laclede Gas Company. The Gas Company claimed that the damage to this pipe-line amounted to $5,018.65 and made demand upon the appellant for this amount. As stated previously, appellant notified the respondent but it denied any liability under the terms of the policy on the sole ground that the casualty was excluded from coverage under Exclusion (1) of the policy. Appellant paid Laclede Gas Company its claim for damages to the pipes on July 30, 1962, but the respondent refused to pay this amount to it. This suit followed.

At the close of the evidence respondent filed its motion for directed verdict on the following grounds.

"1. That under the law, the pleadings and the evidence plaintiff is not entitled to recover against the defendant.

2. That plaintiff has not made a submissible case against the defendant upon which relief can be granted.

3. That plaintiff has not proved any violation of the terms and conditions of the policy of insurance by this defendant.

4. That the evidence does not support any pleaded assignment for any action against defendant for its failure or refusal to extend coverage to plaintiff under the policy."

In sustaining this motion the trial court did not specify on which one or more grounds its action was based.

In considering whether a plaintiff in a suit to recover on a policy of insurance has made a submissible case, the principles generally applicable to civil jury trials determine whether the evidence has been sufficient to establish a prima facie case. 11 Couch on Insurance 2d, § 44:258, p. 685. In an action of this kind, the plaintiff makes a prima facie case by establishing issuance of the policy of insurance, delivery, payment of the premium, the loss through or on account of the cause insured against, and the furnishing of notice and proofs to the insurer as required by the policy. 44 Am. Jur.2d Insurance, § 2059, p. 1002. The insured must, of course, bring himself within the terms of the policy and prove by substantial evidence that the claim sued on is within the coverage provided by the terms of the insurance contract. *Smith v. American National Insurance Company*, 278 S.W.2d 796, 797[1] (Mo.App.1955).

The defense relied on here by the respondent is that appellant's claim is not covered by reason of Exclusion (1) in the policy. It contends that the overhead pipes were a "structure" within the meaning of "building or structure," as these terms are used in Exclusion (1) and that because the crane which toppled over was being used in con-

nection with the dismantling operation the damage to the pipes had a direct causal relationship with the demolition work and resulted therefrom so that the claim came within the "demolition" Exclusion of the policy.

We have found no Missouri appellate decisions construing this Exclusion and neither party to this appeal has cited us one. We do believe, however, that even were we to assume, arguendo, that the pipe-line damaged by the toppling over of the crane constituted a "structure" as that term is used in Exclusion (1), the accident here is within the coverage afforded by the policy of insurance.

██ When the insurer relies upon an exclusion within the contract of insurance as a defense to a claim by the insured, the burden of proof is on the insurer to both plead and prove that the loss sustained by the insured was within the policy exclusion. *Michigan Mutual Liability Co. v. Stallings*, 523 S.W.2d 539, 545[5] (Mo.App.1975), 12 Couch on Insurance 2d, § 44:421, p. 9. Except where the plaintiff in its own evidence establishes an exclusion while making out its prima facie case, the trial court may not properly sustain a motion for directed verdict for the insurer. *Kinney v. Home Security Life Insurance Company*, 2 N.C.App. 597, 163 S.E.2d 520, 522[1] (1968).

Appellant purchased, and respondent issued, this policy of insurance to afford appellant liability protection for accidents occurring in the course of its business of "WRECKING, DISMANTLING AND SALVAGE operations" at its place of business and, as extended by Endorsement # 17, to the dismantling job on E. Catalan Street. According to Schedule No. 1 of the Declarations "Description of Hazards," the hazards to be covered on "Premises—Operations" were "Wrecking Buildings Or Structures— Not Marine—All Operations, Including Salesmen or Clerical at Site of Wrecking." Appellant, in our opinion, made a prima facie case on showing that the policy of insurance was issued to it, the premium paid, the policy delivered, and the accident occurred on the premises on E. Catalan

Street during the course of its wrecking and dismantling operations conducted there. None of these factual issues were actually in dispute. If the respondent was to avoid performance under the terms of the contract it had the burden of proving that the claim fell within the terms of Exclusion (1) of the policy. *Michigan Mutual Liability Co. v. Stallings, supra.*

Exclusion (1)—commonly referred to in the insurance industry as the "Collapse Exclusion"—has been the subject of interpretation by the courts of New York. The Court in *Blades v. Indemnity Insurance Company*, 149 N.Y.S.2d 670 (1956) held that this exclusion did not apply to personal property—in this case the property of a print shop—which was damaged while in a building adjacent to the building being dismantled and demolished to make way for a parking lot when the wall of the adjacent building which the plaintiff was dismantling fell upon the adjacent building. It said, l. c. 673:

> "*The exclusion applies only to damages from raising or demolition of a building resulting in the collapse or structural injury to the building itself.* Certainly damages to the contents of a building cannot be construed either as a collapse of or structural injury to the building itself. If it had been the intent to exclude from coverage damages generally resulting from or caused by demolition, one would expect the exclusion to relate not only to property damages but to personal injuries. The failure to exclude property damages other than those to the building or structure itself is just as significant as the failure to exclude personal injuries. It seems clear that damages to property within an adjacent building were just as fully covered as damages for personal injuries. Neither was within the exclusion clause of the endorsement." (Emphasis supplied).

In *D'Agostino Excavators, Inc. v. Globe Indemnity Company*, 7 A.D.2d 483, 184 N.Y. S.2d 378 (1959) the exclusion was identical to Exclusion (1) here and the typewritten rider entitled "Liability Extension Sched-

ule" contained a description of the insured's operations as follows: "Excavation—for cellars or foundations of buildings—bridges or retaining walls including borrowing, filling or back-filling (excavation in connection with street or road construction or tunneling to be separately rated)." Plaintiff's bulldozer struck and damaged certain walls and structures on the property of another. A judgment was recovered against the plaintiff and, defendant having refused to defend said action, plaintiff brought this action for indemnification. The court construed the policy provision "in the light of the reasonable expectation and purpose of an ordinary businessman in making the contract of insurance," and noting that the specified operations of the plaintiff were embraced within the activities enumerated in the exclusion clause, held that unless the exclusion and purported coverage of plaintiff's regular business activities could be reconciled the exclusion clause would cancel out the purported policy coverage—a result that should not have been contemplated by the parties to the policy because it would require the payment of premiums without affording coverage. The court held, l. c. 381:

"We are also of the opinion that *the language of the exclusion fairly and reasonably construed is limited to the collapse of or injury to any building or structure due solely to excavation or filling or backfilling and does not include injury due to the impact between plaintiff's bulldozer and the affected property.* . . . It does not appear that the excavation or backfilling directly caused the damage; the forceful impact of the bulldozer with the affected structures was the cause thereof." (Emphasis supplied).

The respondent adduced no eyewitness testimony relative to what the crane and boom was actually doing when it toppled over on the pipe-line. What it did adduce was a "personal injury report" on a form prepared for the respondent, written in pen and ink under date of August 9, 1961, and signed for the appellant by "U. H. Colligaron, Comptroller." According to this "re-

port" the time and place of the accident reported was August 4, 1961, at 10:30 a.m. at Laclede Gas Company, 322 East Catalan Street, City of St. Louis, Missouri. In describing how the accident occurred, the report stated: "Earth gave way under an outrigger of Lorraine crane model MC–760, Serial No. 30375, while in the process of removing gas holder at above address causing crane to overturn. The boom section fell across several overhead propane gas lines belonging to Laclede Company causing damage to them." The report further stated that there were no personal injuries involved but that the propane gas lines had been bent and broken. Cause of accident was given as "Nature of work, demolition of gas holder." One question, "Was the accident caused by the breaking of or defect in any part of the ways, works, machinery or appliance," was answered "No." The name of the person in charge and of three witnesses, with their addresses, were also furnished the respondent in this report.

According to the testimony of Mr. Grossman, the President of appellant, Mr. Colligaron, the man whose signature he identified on the report, was, at that time, appellant's office manager. He also testified that although he was not on the scene when the accident happened, he was called and went there immediately, and when he arrived there he could see that the crane had toppled over while it was being moved around the tank because there were no outriggers and had it been engaged in dismantling operations at the time the outriggers would have been on the crane. The accident had been reported to him, including the manner in which it had occurred and he went to the scene to verify this.

 We, like the New York Courts, believe that this exclusion clause in the context of this Comprehensive Liability Policy issued to the appellant for the purpose of affording liability insurance protection in its wrecking, dismantling and salvage operations, is ambiguous and subject therefore to construction in an effort to resolve the

apparent conflict between the purpose for which the Policy was purchased and this clause. We hold that in this context and under the facts here adduced, the exclusion does not apply; that the damage to the "structure," if such they be, was not by reason of "the collapse of or structural injury to any building or structure due to . . . demolition of any building or structure," it was due, rather, to the negligent moving of the crane and boom or, according to the respondent's evidence, the subsidence of the earth under it. There is absolutely no evidence, neither in the appellant's nor in the respondent's case, that the crane and the boom toppled over by reason of any collapse of or structural injury to the gas holder or any other building or structure adjacent thereto.

▮ Because the only defense available to the respondent under the pleadings [3] and the evidence was this exclusionary clause, and, inasmuch as we have held that such clause was not available to the respondent, we further find that the trial court erred in denying appellant's motion for directed verdict at the close of the case.

▮ Appellant did not brief its prayer for vexatious delay and attorney's fees in this court and those issues are therefore abandoned. *Metter v. Jenssen*, 498 S.W.2d 581, 583[1] (Mo.App.1973), certiorari denied, 414 U.S. 1115, 94 S.Ct. 848, 38 L.Ed.2d 742.

Although we could reverse and remand this cause to the trial court with directions, we have chosen to dispose of this aged litigation in this court pursuant to the authority vested by Rule 84.14. Judgment is therefore entered for the appellant in the sum of $5,018.65 and interest at 6% per annum from July 30, 1962, in the sum of $4,516.80, for a total judgment of $9,536.35 and court costs.

SIMEONE, C. J., and GUNN, J., concur.

3. On appeal the respondent, for the first time, sought to interpose res adjudicata as a defense. Res adjudicata, however, is one of those affirmative defenses which the party seeking to interpose must set forth affirmatively in its responsive pleading. Rule 55.08; *Jones v. Des*

*Moines & Mississippi River Levee Dist. No. 1*, 369 S.W.2d 865, 872[3] (Mo.App.1963). Respondent did not allege this affirmative defense in its pleadings and we do not for that reason consider it here.